**CHICAGO, R. I. & P. RY. CO. et al. v. UNITED STATES et al.**

(District Court, N. D. Texas, Dallas Division. June 8, 1925.)

No. 3091-349.

1. **Commerce ⊚⟲85 — Interstate Commerce Commission has jurisdiction to establish rates for carriage by rail and water.**

Under Interstate Commerce Act as amended, the Interstate Commerce Commission has jurisdiction to establish through joint rates for carriage partly by rail and partly by water.

2. **Commerce ⊚⟲91—Order of Interstate Commerce Commission, not arbitrary nor unreasonable, not reviewable by courts.**

The courts are without power to interfere with an order of the Interstate Commerce Commission, made within its jurisdiction and not arbitrary nor unreasonable.

3. **Commerce ⊚⟲88—Order of Commission requiring carriers to fix rail and water rates by relation to all rail rates held valid.**

Order of Interstate Commerce Commission, requiring carriers to fix through rail and water rates by relation to their all rail rates between the same points, held not invalid.

4. **Commerce ⊚⟲85 — Commission may fix through rate, including water carriage by an independent carrier.**

To give the Interstate Commerce Commission authority to fix a through rate, including both rail and water carriage, it is not necessary that the water carrier should be controlled by a rail carrier.

In Equity. Suit by the Chicago, Rock Island & Pacific Railway Company and others against the United States and others. Bill dismissed.

Lassiter, Harrison & Pearson, of Fort Worth, Tex., M. G. Roberts, A. B. Enoch, of Chicago, Ill., and Goree, Odell & Allen, of Forth Worth, Tex., for plaintiffs.

P. J. Farrell and D. W. Knowlton, both of Washington, D. C., for Interstate Commerce Commission.

Blackburn Esterline, of Washington, D. C., Asst. Sol. Gen., for the United States.

R. C. Fulbright, of Houston, Tex., for Houston, Dallas, and Oklahoma Cotton Exchanges, interveners.

Before FOSTER, Circuit Judge, and ESTES and ATWELL, District Judges.

ATWELL, District Judge. The bill seeks an interlocutory restraining order, and the writer called to his assistance Circuit Judge FOSTER and District Judge ESTES. Under the amendment to the Judiciary Act of February 13, 1925 (43 Stat. 936), it is necessary that the cause on its merits must be tried before three judges; therefore all counsel during the hearing agreed that the hearing should be considered as a hearing on the merits. The record made before the Interstate Commerce Commission was introduced. There were some additions to that testimony.

Complaint is made because the order of the Interstate Commerce Commission to use the all rail rate from Oklahoma to New England points as a relating rate for the promulgation of a rail, water, and rail rate between the same termini; that is to say, the Commission found that it would cost 4 cents to insure the part water rate, and it therefore ordered the same rate for rail, water, and rail as for all rail, less 4 cents. It is maintained that this is not the fixing of a reasonable rate in the maner and form authorized by the law, and that there was no sufficient evidence before the Commission to ascertain whether the all rail rate was a reasonable rate, and also to ascertain whether the rail, water, and rail rate would be reasonable; therefore that the rate ordered is arbitrary and unjustifiable. It is also maintained that the Commission was without power to fix a rate partly by rail and partly by water.

[1] 1. The Interstate Commerce Act (Act Feb. 4, 1887, amended June 29, 1906, April 13, 1908, June 18, 1910, May 29, 1917, Aug. 10, 1917, and February 28, 1920) applies to common carriers engaged in "the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment." Section 1, par. 1, subdivision A (Comp. St. Ann. Supp. 1923, § 8563).

A part of paragraph 3 of section 15 of the act (Comp. St. Ann. Supp. 1923, § 8583) reads as follows: "The Commission may, and it shall whenever deemed by it to be necessary or desirable in the public interest, after full hearing upon complaint or upon its own initiative without a complaint, establish through routes, joint classifications, and joint rates, fares, or charges, applicable to the transportation of passengers or property, or the maxima or minima, or maxima and minima, to be charged (or, in the case

of a through route where one of the carriers is a water line, the maximum rates, fares, and charges applicable thereto), and the divisions of such rates, fares, or charges as hereinafter provided, and the terms and conditions under which such through routes shall be operated; and this provision, except as herein otherwise provided, shall apply when one of the carriers is a water line."

Paragraph 13 of section 6 (Comp. St. Ann. Supp. 1923, § 8569) provides: "When property may be or is transported from point to point in the United States by rail and water through the Panama Canal or otherwise, the transportation being by a common carrier or carriers, and not entirely within the limits of a single state, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars, in addition to the jurisdiction given by the act to regulate commerce, as amended June 18, 1910."

Then follow subdivisions (a), (b), (c), and (d), which authorize the Commission to establish physical connection between lines of a rail carrier and a dock; to establish through routes and maximum joint rates between and over such rail and water lines; to establish proportional rates or maximum or minimum, or maximum and minimum, proportional rates for such rail and water carriers; and when any rail carrier, subject to the act, enters into arrangement with any water carrier, operating from a port in the United States, the Commission may require such railway to enter into similar arrangements with any and all other lines of ships operating from the same port.

Subdivision 4 of section 15 (Comp. St. Ann. Supp. 1923, § 8583) provides: "In establishing any such through route the Commission shall not (except as provided in section 3, and except where one of the carriers is a water line), require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad. * * *"

Section 500 of the Transportation Act of 1920 (Comp. St. Ann. Supp. 1923, § 10071¼k) reads in part as follows: "It is hereby declared to be the policy of Congress to promote, encourage, and develop water transportation, service, and facilities in connection with the commerce of the United States, and to foster and preserve in full vigor both rail and water transportation."

The Morgan Line is owned and controlled by the Southern Pacific Railway; the Mallory Line is an independent concern. Over both of these lines there was, at the time of the entering of the order which is complained of, an "arrangement" for jointly transporting freight from Oklahoma points to New England by rail and water; that is, there were established rates for such service. These excerpts from the law, though not claimed to be exhaustive, and this suggestion from the evidence, seem to justify the Commission in taking jurisdiction.

[2] 2. The record that was before the Interstate Commerce Commission shows that certain Cotton Exchanges and Boards of Trade "complained" to the Commission in the year 1921, and sought a cotton and linters rate partly by rail and partly by water from Oklahoma to the northeastern part of the United States and eastern Canada. The complaint, after answers, was set for hearing early in 1922 before an examiner. Upon the examiner's report a hearing was had before the Interstate Commerce Commission. The complainants were successful only in the securing of a rate from Oklahoma to New England territory. The order of the Commission provided that the defendants, including the plaintiffs here, "should establish joint rail and water and rail, water, and rail rates on cotton from Oklahoma points to points in New England territory; that the existing rates for such transportation are, and for the future will be, unreasonable to the extent they exceed, or may exceed, rates constructed by the deduction of 4 cents from the present all rail rates," and "that the rail and water and the rail, water, and rail rates on cotton from Oklahoma points to other points in the northeastern portion of the United States are not unreasonable." This is the order the Commission entered.

A rehearing was asked, in which substantially the same points were presented as are presented in this case. In May, 1924, the Commission denied the petition for rehearing, but it allowed further oral argument in July of the same year. In March, 1925, the Commission issued the order complained of. This was followed by assisting orders on March 28, 1925, and April 29, 1925. The order is effective June 15, 1925.

There were approximately 80 railways cited to appear and included in the order, as well as several steamship lines, including the Morgan and Mallory Lines. The proceeding was quite within the jurisdiction of the Commission, and its carefulness and exhaustive investigation, and the completeness of the orders issued by it, preclude any thought

of the arbitrary or of the unreasonable. If that be true, the courts have no power to interfere. Seaboard Air Line Co. v. U. S., 254 U. S. 57, 41 S. Ct. 24, 65 L. Ed. 129; Manufacturers' Railway Co. v. U. S., 246 U. S. 457, 38 S. Ct. 383, 62 L. Ed. 831; New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605; United States v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 68 L. Ed. 1165.

[3] The criticism that the Commission related the rail and water rate to the all rail rate in such a way as to be illegal is hardly well taken. The Commission announced a maximum, and allows the carriers, rail, water, and rail, to fix their own rate 4 cents under such maximum, or as much lower as they may wish.

[4] Similarly formless is the suggestion that there should be any immunity of the port to port water carrier, unless such water carrier is controlled by a rail carrier. The entire policy of the law and the exact wording of it preclude such a construction. An "arrangement" is sufficient.

There appearing to us no merit in the bill, the same is dismissed.