**BOOTH S. S. CO. et al. v. UNITED STATES.**

District Court, S. D. New York.
Aug. 10, 1939.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Cletus Keat-

ing and Roger Siddall, both of New York City, of counsel), for petitioners.

Walter W. Ahrens, of Washington, D. C., for interveners.

John T. Cahill, U. S. Atty. (George B. Schoonmaker, of New York City, and Ralph H. Hallett, of Washington, D. C., of counsel), for the United States.

Before PATTERSON, Circuit Judge, and LEIBELL and CONGER, District Judges.

CONGER, District Judge.

This is a proceeding brought to annul and set aside an order of the United States Maritime Commission, dated March 23, 1939, directing petitioners to cease and desist the demanding or collecting for the storage of coffee on piers at the port of New York, of charges which are lower than their storage charge contemporaneously in effect at the port of New York on other commodities transported from their said ports of loading. The proceeding is brought under Section 31 of the Shipping Act 1916, 46 U.S.C. § 830, 46 U.S.C.A. § 830, and 28 U.S.C. § 46, 28 U.S.C.A. § 46.

This cause came on for a hearing before a Statutory Court of three judges, called pursuant to the provision of Section 47 of Title 28 of the United States Code, 28 U.S.C.A. § 47.

This controversy arose out of the Free Storage Case (Storage of Import Property, 1 U.S.M.C. 676) which involved, among other things, alleged unlawful practices by common carriers by water in foreign commerce, relative to the storage or delivery of import property at the Port of New York, New York, Boston, Massachusetts, Philadelphia, Pennsylvania, Baltimore, Maryland and Norfolk, Virginia. In that case the Commission found that there was no showing of unlawful practices in connection with the storage or delivery of import property at four of the ports mentioned, but that there were unreasonable practices in connection with free storage or delivery of import property at the Port of New York. It found further that the free time allowed on import property at New York should not exceed ten days, exclusive of Sundays and legal holidays

and so ordered on November 16, 1937. The effective date of this order was January 21, 1938. The Commission stated that the imposition of merely nominal charges for storage after free time "would plainly violate the spirit of the order", but it did not indicate the range of a "nominal" charge, either in its report in that proceeding or in its present report.

In compliance with this order the carriers, including petitioners, entered into two agreements, Nos. 6205 and 6215, which they filed with the Commission, 46 U.S.C. § 814, 46 U.S.C.A. § 814. These are summarized in the Report of the Commission as follows:

"Under agreement No. 6205, which deals with cargo loaded on vessels at ports in Argentina, Uruguay, Paraguay, and Brazil up to and including but not north of Victoria, the charges are as follows:

"Cargo other than coffee:

"First five calendar days or fraction thereof, 2.5 cents per 100 pounds or 1 cent per cubic foot, weight or measurement as freighted, minimum 50 cents;

"Second five calendar days or fraction thereof, 5 cents per 100 pounds or 2 cents per cubic foot, weight or measurement as freighted, minimum $1;

"Each succeeding five calendar days or fraction thereof, 10 cents per 100 pounds or 4 cents per cubic foot, weight or measurement as freighted, minimum $2 each period.

"Coffee:

"First five calendar days or fraction thereof, 1 cent per bag of not exceeding 60 kilos;

"Second five calendar days or fraction thereof, 2 cents per bag of not exceeding 60 kilos.

"(If the goods shall not have been removed from piers at the end of the second five-day period, they will be placed in public storage at risk and expense of the goods.)"

Under agreement No. 6215,[2] the charges agreed to as minima are as follows:

"Cargo other than coffee:

"First five calendar days or fraction thereof, 2 cents per 100 pounds or 1 cent

---

[2] "This agreement, unlike No. 6205, is not restricted in terms to cargo loaded at particular ports. It is intended to apply to all import property discharged at the port of New York by the parties thereto, whose combined operations extend to ports in Venezuela, Colombia, Ecuador, Peru, and Chile, S. A., Central America, Mexico, Canal Zone, and the West Indies."

per cubic foot, weight or measurement as freighted, minimum 50 cents.

"Coffee:

"First five calendar days or fraction thereof, 1 cent per bag. (Upon the expiration of the one five-day period, all cargo in the custody of the carriers will be placed in public store or warehouse at *the risk and expense of the goods*.)"

Upon protest of the Boston Port Authority, Joint Executive Transportation Committee of Philadelphia Commercial Organizations, the Norfolk Port-Traffic Commission and the Baltimore Association of Commerce, the Commission on April 12, 1938 entered an order providing that on its own motion and without formal pleading it should enter upon: "an investigation concerning the lawfulness and propriety of the said agreements and storage charges, including the relationship of charges on coffee and other cargo." These proceedings were labeled "Docket No. 482, In the Matter of Storage Charges under agreement 6205 and 6215", and came on for hearing before F. J. Horan, an Examiner of the Division of Regulation of the Commission, on May 16, 17, and 18, 1938. Examiner Horan in his report, issued by the Commission, August 24, 1938, held that the penalty charges were fair and reasonable, that they were lawful and that there was no undue congestion caused on the piers in New York through delay in removing the coffee.

The Commission refused to adopt the report of the examiner and found among other things that the respondent's charges on coffee remaining on piers at the port of New York after the expiration of free time result in unlawful preference and prejudice, in violation of Section 16 of the Shipping Act of 1916, 46 U.S.C. § 815, 46 U.S.C.A. § 815. The Commission further found that respondents were engaged in unreasonable practices in connection with the storage of import coffee at the port of New York in violation of Section 17 of the Shipping Act, 1916, 46 U.S.C. § 816, 46 U.S.C.A. § 816, to the extent that such charges, after free time, are lower than petitioner's storage charges maintained on other import property at the port of New York. Upon its said report and upon its findings and conclusions made therein the Commission made its order of March 23, 1939. No objection is made by petitioners herein to that part of the order which disapproves of agreements 6205 and 6215. Petitioners object only to that part of the order which reads as follows: "It is ordered, that respondents, be, and they are hereby, notified and required to cease and desist, on or before May 11, 1939, and thereafter to abstain from publishing, demanding, or collecting for the storage on piers at the port of New York after the expiration of free time of coffee transported from their ports of loading herein involved charges which are lower than their storage charges contemporaneously in effect at the port of New York on other commodities transported from their said ports of loading;".

If the storage charges on coffee were increased to the same level as those on other commodities, a bag of Brazilian coffee (weighing 132 pounds) would be required to pay a storage charge of 3.3 cents for the first five days after the 10 day free storage period, and 6.6 cents for the second five days.

The Boston Port Authority, Baltimore Association of Commerce, Norfolk Port-Traffic Commission and the Joint Executive Transportation Committee of Philadelphia Commercial Organizations are interveners in this proceeding (§ 31 of Shipping Act of 1916). They actually participated in the proceedings before the Commission and submitted evidence, and have filed a brief herein in opposition to the petitioners.

Petitioners contend that that part of the order of the Commission quoted above is unlawful and void and should be annuled and set aside. Petitioners claim that they have proven by the evidence produced on their behalf before the examiner that there is a special reason why coffee should be treated differently from other commodities and that even between the two coffees, one known as Brazilian and the other as Carribean coffee, there should be a differential as to free time and penalty charges. They contend that the penalty charges imposed on coffee after free time is not a nominal charge but one honestly imposed after study and after conference with the coffee shippers; that the imposition of this penalty charge has accomplished its purpose, that of clearing the piers of cargo, which was one of the main purposes for the issuance of the order of January 21, 1938. Petitioners show that before the imposition of the penalty charge upon coffee 29% of

Brazilian coffee remained on the dock after ten days; that after the imposition of the penalty charge only 11.4 remained on the pier more than ten days; and only 4.5 remained after fifteen days. That as to the Carribean coffee, prior to the imposition of the penalty charge, 48% remained on the pier more than ten days; that after the imposition of the penalty charge 8.8% remained after ten days and none remained after fifteen days. A merely nominal charge would hardly produce this result. Petitioners urge that the penalty charge on coffee having been adjusted with reference to the particular traffic involved, and being high enough to reasonably clear the piers, meets all the requirements of the law and results in no undue and unreasonable preference in favor of coffee as against the other commodities, although the penalty charge for them is considerably higher.

Petitioners make the further contention that if they are forced to raise the penalty charge on coffee, it will seriously injure the coffee trade, the margin of profit on coffee being very small (19 cents a bag to the importer); and that a charge upward would result in undue preference in favor of other ports, particularly the port of New Orleans as against the port of New York. It further appears that the cost of transporting and storing the coffee in warehouses in New York would be about 19 cents. The interveners on the other hand introduced evidence which they claim in the main successfully controverts the claims and the evidence of the petitioners herein, that an increase in the pier storage rates would direct part of the coffee to other ports.

It will not be necessary to discuss the details of the testimony of the parties except to state that the whole matter was gone into thoroughly and as a result of the testimony of both sides to this controversy, an issue of fact was created and presented, first to the examiner and secondly to the Commission when it reviewed his report.

Upon the issues presented to them, the Commission found against the petitioners herein (one Commissioner dissenting and another not participating) and with reference to that part of the order to which petitioners object, the Commissioners made the following finding: "We further find that respondents are engaged in unreasonable practices in connection with the storage of import coffee at the Port of New York in violation of section 17 of the Shipping Act, 1916, to the extent that such charges after free time are lower than their storage charges maintained on other import property at the port of New York."

The record does not show that the importer of any other commodities at the Port of New York complained of any discrimination accorded coffee under the pier storage charges fixed by the petitioners.

There is serious doubt in the mind of this Court as to the correctness of the findings and conclusions of the Commission, and as to whether the Commission should not have adopted the report of the trial examiner, Mr. Horan.

■ But that doubt would not justify the court in setting aside and annulling the order of the Commission. The test applied by the Supreme Court seems to be that if there is evidence to support the Commission's findings, its order will not be set aside by the court even though the court might have a different opinion as to the weight of the evidence and might come to a different conclusion on the same set of facts. The case of Swayne & Hoyt, Ltd. v. U. S., 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659, is in point. There the court said: "Such determinations will not be set aside by courts if there is evidence to support them. Even though, upon a consideration of all the evidence, a court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment. See Manufacturers Ry. Co. v. United States, 246 U.S. 457, 481, 38 S.Ct. 383, 62 L.Ed. 831; Pennsylvania Co. v. United States, 236 U.S. 351, 35 S.Ct. 370, 59 L.Ed. 616; cf. United States Navigation Co. v. Cunard S. S. Co., supra, 284 U.S. 474, 484, 52 S.Ct. 247, 250, 76 L.Ed. 408. Whether a discrimination in rates or services of a carrier is undue or unreasonable has always been regarded as peculiarly a question committed to the judgment of the administrative body, based upon an appreciation of all the facts and circumstances affecting the traffic. Manufacturers Ry. Co. v. United States, supra; Pennsylvania Co. v. United States, supra, 236 U.S. 351, 361, 35 S.Ct. 370, 59 L.Ed. 616; Seaboard Air Line Ry. Co. v. United

States, 254 U.S. 57, 62, 41 S.Ct. 24, 25, 65 L.Ed. 129; Pennsylvania R. Co. v. International Coal Co., 230 U.S. 184, 196, 33 S.Ct. 893, 57 L.Ed. 1446 [Ann.Cas.1915A, 315]; Nashville, C. & St. L. Ry. v. Tennessee, 262 U.S. 318, 322, 43 S.Ct. 583, 584, 67 L.Ed. 999."

A careful examination of the testimony taken before the examiner discloses that there was evidence upon which the Commission could base its findings and ultimate order. It seems that the disparity between the storage penalty charges on coffee and on all other cargo of these carriers at the Port of New York, might at least be considered some evidence of discrimination and preference, especially since it appears that the penalty charges on cargo, other than coffee, were uniform and were placed thereon arbitrarily without special study and consideration. The Commission, as above indicated, had the authority and the power under the Shipping Act to conduct this investigation and make its findings and conclusions and its order.

Petitioners argue that the order of the Commission is illegal because it in effect requires the petitioners to establish the same pier storage rates for all commodities including coffee, and that in Turner Dennis & Lowry Lumber Co. v. C. M. & St. Paul Railway, 271 U.S. 259, at page 263, 46 S.Ct. 530, 531, 70 L.Ed. 934, the Supreme Court said: "Neither the Constitution nor the rule of reason requires that either freight or demurrage charges or the reconsignment privilege shall be the same for all commodities." The citation of the authority is correct, but petitioners' interpretation of the Commission's order herein is not. Perhaps the wording of the order could have been improved in the interest of clarity, but when we keep in mind that it was a cease and desist order and that the greater part of the order is descriptive of plaintiffs' alleged improper practice, it is evident that what is condemned by the order is the preference accorded coffee over all other commodities in the pier storage rates fixed by petitioners.

The defendant is entitled to judgment dismissing the petition on the merits.