# L. T. BARRINGER & CO. *v.* UNITED STATES ET AL.

No. 520.   Argued March 3, 1943.—Decided May 3, 1943.

*Mr. Nuel D. Belnap,* with whom *Messrs. Luther M. Walter* and *John S. Burchmore* were on the brief, for appellant.

*Mr. Robert L. Pierce,* with whom *Solicitor General Fahy, Assistant Attorney General Arnold,* and *Messrs. Daniel W. Knowlton* and *J. Stanley Payne* were on the brief, for the United States et al.; and *Mr. Roland J. Lehman,* with whom *Messrs. R. S. Outlaw, C. S. Burg,* and *Clinton H. McKay* were on the brief, for the Atchison, Topeka & Santa Fe Railway Co. et al.,— appellees.

Mr. Chief Justice Stone delivered the opinion of the Court.

This is a suit by appellant, a shipper of cotton over the lines of appellee railroads, brought under 28 U. S. C. § 41 (28), to enjoin and set aside an order of the Interstate Commerce Commission. The District Court of three judges dismissed the complaint, and the case comes here on direct appeal pursuant to 28 U. S. C. § 47. The question is whether the Commission erred in refusing to set

aside tariffs on cotton, filed by the five appellee railroads, as unjustly discriminatory and unduly prejudicial to shippers in violation of §§ 2 and 3 (1) of the Interstate Commerce Act, 24 Stat. 379, 380; 49 U. S. C. §§ 2, 3 (1).

From the report of the Commission, on which its order was based, 248 I. C. C. 643, the following facts appear. Appellees carry cotton from points in Oklahoma to ports on the Gulf of Mexico. Their lines also form relatively short parts of the through routes over which cotton moves from Oklahoma to points in the southeastern United States. During recent years carriers of cotton to the Gulf ports have been faced with serious truck competition. To meet it, successive rate reductions have been made. Until about ten years ago the only rates available on cotton were less-than-carload rates, since individual shipments of cotton are seldom, if ever, in carload quantities. As is customary on less-than-carload shipments, the cotton was loaded at the expense of the carrier.[1]

During 1932 and 1933 the carriers, in an effort to reduce rates and achieve operating economies, put in effect so-called carload rates for cotton which the Commission, after investigation, approved in Cotton From and to Points in Southwest and Memphis, 208 I. C. C. 677. Under these rates the cotton was typically collected in less-than-carload quantities at the ginning points, carried by rail for short distances to compressors, and after compression assembled in carload quantities for shipment

---

[1] Loading is customarily performed at the carrier's expense on less-than-carload freight, Loading Cotton in Oklahoma, 248 I. C. C. 643, 644, and at the shipper's expense on carload freight, *Merchants Warehouse Co.* v. *United States*, 283 U. S. 501, 506; *Pennsylvania R. Co.* v. *Kittaning Co.*, 253 U. S. 319, 323; Loading and Unloading Carload Freight, 101 I. C. C. 394, 396; McCormick Warehouse Co. *v.* Pennsylvania R. Co., 148 I. C. C. 299, 300.

For discussions of loading practices on cotton in the Southwest, see Cotton Loading Provisions in the Southwest, 220 I. C. C. 702; Cotton Loading and Unloading in the Southwest, 229 I. C. C. 649.

to destination. The shipper paid the local, less-than-carload rate to the compress point, and the local rate from compress point to destination, but on the cotton's arrival at destination the carrier refunded the difference between the freight paid and the through, carload, rate from point of origin to destination. On these rates loading was at the shipper's expense; if the carrier performed the loading service a charge of 5½ cents a square bale was made, which was paid by a deduction from the refund allowed by the carrier on the transit settlement just referred to. This loading charge was stated separately in appellees' tariffs filed with the Commission, pursuant to § 6 (1).

Despite the reduction in cost to shippers produced by the adoption of these schedules, truck competition continued to be a serious problem. In 1939 carriers of cotton from Texas points effected a further rate reduction by eliminating the loading charge. The tariffs here under consideration, filed by appellees to be effective on June 11, 1941, similarly eliminate the loading charge for cotton moving from compress points in Oklahoma to certain ports on the Gulf of Mexico,[2] while retaining it on cotton moving to the Southeast.

Appellant buys cotton in Oklahoma for resale to mills in the Southeast. Under the proposed tariffs it must continue to pay the loading charge on cotton which it ships to the Southeast, while merchants who ship to the Gulf ports, and who compete with appellant in the purchase of cotton, are relieved of that charge. Contending that this situation would create an unjust discrimination under § 2, and would be unduly prejudicial under § 3 (1), appellant filed a petition with the Commission under § 15 (7) to suspend the proposed tariffs.

Division 3 of the Commission, after a hearing in which appellant participated, issued its report and order, refus-

---

[2] Beaumont, Corpus Christi, Galveston, Houston, Orange, Port Arthur, and Texas City, Texas, and Lake Charles, Louisiana.

ing to set aside the proposed rates. It found that truck competition had continued to increase during 1940, so as to justify appropriate efforts by the carriers to meet such competition; [3] that the loading charge caused annoyance to shippers; that the cost of performing the loading service was in most cases nominal and its performance by the carrier would result in loading to maximum capacity, so that elimination of the charge was a suitable method of achieving a needed reduction in rates which were already low; that carriers in states farther East opposed the extension into their territory of the practice of free loading, and the elimination by appellees of the loading charge on cotton moving into that territory; that the "rates to the Southeast are already lower relatively than they are to the Texas ports"; and that "there is no trucking of cotton from Oklahoma . . . to the Southeast." Accordingly it found that the proposed elimination of the loading charge "is just and reasonable and not shown to be otherwise unlawful." Appellant's petition for reconsideration was denied by the full Commission, and the proposed rates, which had been suspended while under consideration by the Commission, became effective.

Appellant's principal contention is that, in considering the validity of the proposed tariffs under § 2, the Commission could look only at the charge for the loading service and was not entitled to consider conditions relating to the through line-haul rates. Section 2 of the Act declares it to be an "unjust" and prohibited discrimination for any carrier "directly or indirectly, by any special rate, rebate, drawback, or other device," to charge one person more or less than another for "a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and con-

---

[3] The Commission pointed out that carriers were free to adopt free loading or not as they chose, and in the same proceeding approved an application of certain Texas carriers to reëstablish the loading charge.

ditions." It is undoubted that the loading service here involved is a transportation service to which § 2 applies. § 1 (3) (a); *Merchants Warehouse Co.* v. *United States,* 283 U. S. 501, 511.

Section 2 is aimed at the prevention of favoritism among shippers. See Sharfman, Interstate Commerce Commission, vol. III–B, pp. 360–61. Where the transportation services are rendered under substantially similar conditions the section has been thought to prohibit any differentiation between shippers on the basis of their identity, *Interstate Commerce Commission* v. *Baltimore & Ohio R. Co.,* 225 U. S. 326, 342; *Interstate Commerce Commission* v. *Delaware, L. & W. R. Co.,* 220 U. S. 235, 252, or on the basis of competitive conditions which may induce a carrier to offer a reduction in rate to one shipper while denying it to another similarly situated. *Wight* v. *United States,* 167 U. S. 512, 516–18; *Interstate Commerce Commission* v. *Alabama Midland Ry. Co.,* 168 U. S. 144, 166. Compare *Seaboard Air Line Ry. Co.* v. *United States,* 254 U. S. 57, 62. But differences in rates as between shippers are prohibited only where the "circumstances and conditions" attending the transportation service are "substantially similar." Whether those circumstances and conditions are sufficiently dissimilar to justify a difference in rates, or whether, on the other hand, the difference in rates constitutes an unjust discrimination because based primarily on considerations relating to the identity or competitive position of the particular shipper rather than to circumstances attending the transportation service, is a question of fact for the Commission's determination. Hence its conclusion that in view of all the relevant facts and circumstances a rate or practice either is or is not unjustly discriminatory within the meaning of § 2 of the Act will not be disturbed here unless we can say that its finding is unsupported by evidence or without rational basis, or rests on an erroneous construc-

tion of the statute. *Seaboard Air Line Ry. Co.* v. *United States, supra,* 62; *Interstate Commerce Commission* v. *Delaware, L. & W. R. Co., supra,* 251–2; *Louisville & Nashville R. Co.* v. *United States,* 282 U. S. 740, 758; *Merchants Warehouse Co.* v. *United States, supra,* 508; *Baltimore & Ohio R. Co.* v. *United States,* 305 U. S. 507, 524.

In considering the circumstances and conditions attending the transportation service, the Commission was not required to ignore the fact that the loading charges, although separately stated in the tariffs, are in each case a component part of the total line-haul cost to the shipper and inseparable from it. All the carrier loading costs not compensated for by the loading charges, if any, to shippers, are necessarily absorbed by the carrier out of the line-haul charges which shippers pay. The loading charge is not paid until the line haul is completed and the ultimate destination known, and then only by a reduction of the refund payable by the carrier on the transit settlement prescribed by the tariffs. And where cotton moves on less-than-carload rates, the cost of loading is absorbed by the carrier, although the loading services performed by the carrier are the same. In these circumstances the net effect, on the shipper's line-haul cost, of the remission by the tariff of any part of the loading charge is precisely the same as though the like reduction were made in the line-haul tariff.

It has long been established by our decisions that differences in competitive conditions may justify a relatively lower line-haul charge over one line than another, and that it is for the Commission, not the courts, to say whether those differences are sufficient to show that a difference in rates established to meet those conditions is not an unjust discrimination or otherwise unlawful. *Texas & Pacific Ry. Co.* v. *United States,* 289 U. S. 627, 636–7, and cases cited; *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457, 481; *United States* v. *Chicago Heights Trucking Co.,*

8

310 U. S. 344, 352–53; *Board of Trade* v. *United States,* 314 U. S. 534, 546. It follows that competitive conditions which would justify and render non-discriminatory a reduction in the line-haul tariff on a particular class of traffic, would likewise justify the reduction and render it non-discriminatory if made in the loading charge instead. Whether made in the one charge or the other, it enters into the total cost of the line haul to the shipper, regardless of whether the loading charge be separately stated or included in the line-haul tariff. Since the only effect on the shipper is in the difference in the line-haul charge and he is harmed no more by one method of effecting that difference than the other, any conditions attending the line haul which justify the one as non-discriminatory equally justify the other.

This Court has held that the Commission may consider the through line-haul rate in determining whether a related accessorial charge is just and reasonable under § 1 (5) (a). *Atchison, T. & S. F. Ry. Co.* v. *United States,* 232 U. S. 199, 219–220. We find nothing in § 2 or in our decisions that precludes the Commission from similarly looking at the whole of the services rendered to different shippers to determine whether the conditions are such as to justify a difference in charges made for one component part of that whole. Nor has the Commission found such a limitation in the statute. Archer-Daniels-Midland Co. v. Alton R. Co., 246 I. C. C. 421, 428, 430; Minneapolis Traffic Assn. v. Chicago & N. W. Ry. Co., 241 I. C. C. 207, 220, 224; Railroad Comm'n of Wisconsin v. Ann Arbor R. Co., 177 I. C. C. 588, 592; State Docks Commission v. Louisville & Nashville R. Co., 167 I. C. C. 112, 115–116; Tide Water Oil Co. v. Director General, 62 I. C. C. 226, 227; Richmond Chamber of Commerce v. Seaboard Air Line Ry., 44 I. C. C. 455, 466.[4]

---

[4] Insofar as Birkett Mills v. Delaware, L. & W. R. Co., 123 I. C. C 63, 65, is to the contrary, it appears to rest on a misinterpretation of

Obviously there is nothing in this construction of § 2 which would preclude the Commission from setting aside a difference in a separately stated service charge which in fact operates to discriminate unjustly among shippers. We have repeatedly sustained a finding of the Commission that such a difference, based on a difference in identity of shippers or the ownership of the goods shipped, or on other circumstances irrelevant to the carrier service rendered, is an unjust discrimination to shippers. *Wight* v. *United States, supra; Interstate Commerce Commission* v. *Delaware, L. & W. R. Co., supra; Interstate Commerce Commission* v. *Baltimore & Ohio R. Co., supra; Seaboard Air Line Ry. Co.* v. *United States, supra; Louisville & Nashville R. Co.* v. *United States, supra; Merchants Warehouse Co.* v. *United States, supra.* The distinction between those cases and this is that here the difference in the service charge is made between through shippers over different routes, and is based on relevant differences in the "circumstances and conditions" of the total transportation services rendered by the carriers. It was within the competence of the Commission to find that this involved no unjust discrimination.

This is not to say that in every case where the differences in total transportation services rendered are such as would justify a greater charge to one than to another shipper, the difference in charge can at the carrier's option be made in the charge for an accessorial service such as the loading service here involved. But the decision whether the circumstances and conditions are such as to justify a difference in the accessorial charge, or rather to require that any adjustment be made in the line-haul charge, is one which the statute has left to the determination of the

the effect of our decision in *Central R. Co.* v. *United States,* 257 U. S. 247, 255. Moreover it does not appear that there were present in that case any circumstances justifying a difference in the charges for the total transportation services rendered.

Commission, which Congress has entrusted with the power and duty of guarding against the prohibited favoritism. In the circumstances of this case, we cannot set aside, as lacking in rational basis, the Commission's determination that the reduction in the line-haul cost to the shipper effected by remission of the loading charge did not result in an unjust discrimination.

It is no answer to this determination of the Commission to say that the rates here approved as non-discriminatory may be open to attack in a proceeding under § 13 (1) to adjust the line-haul rates in which all connecting carriers who participate in the tariff are required to be parties by Rule II (c) of the Commission's 1936 Rules of Practice, or in a proceeding under § 15 (3) to establish divisions of the through rates among the connecting carriers, "a matter which in no way concerns the shipper," *Louisville & Nashville R. Co.* v. *Sloss-Sheffield Co.*, 269 U. S. 217, 234. Here the difference in loading charge is assailed by a shipper only, and on the grounds alone that it is unjustly discriminatory or unduly preferential. The discrimination or preference, if any, is caused by the carriers who perform in part the line-haul transportation service. The Commission has not undertaken to pass upon the validity of the line-haul rates, and it does not appear that appellant has asked it to do so. It has passed only on the question of discrimination or preference resulting from the remission of the loading charge. In doing so it has, as § 2 contemplates, looked at all the relevant circumstances and conditions, including the respective line-haul conditions, in order to ascertain whether the loading service and line hauls are made under substantially similar circumstances and conditions with respect to the particular discrimination charged. The Commission has found that they are not and that the difference in service charge is not unjustly discriminatory as to shippers.

Section 2 gives us no mandate, and none is to be implied from the statutory scheme, to reverse that finding and to

declare that the difference in service charge constitutes an unjust discrimination merely because the total through cost, of which that charge is a component, may be open to attack in a proceeding bringing the through rate into question. See *Manufacturers Ry. Co.* v. *United States, supra,* 479, 481. But unless we are to say that § 2 precludes the Commission from considering facts which are relevant to the issue of discrimination which it must decide, we perceive no other ground upon which their consideration can be deemed forbidden.[5] In the present

---

[5] The Commission has not interpreted its Rule II (c) as precluding it from looking at relevant conditions and circumstances relating to the through rate although only part of that rate is brought in issue in the proceeding before it and other carriers participating in the through rate have not been joined as parties. Where the attack is on a component part of the through haul cost on grounds other than its effect on the through rate structure, there is no occasion for joining the other carriers participating in the through rate.

The Commission has frequently held that a complainant who attacks a component part of a through rate as unreasonable or prejudicial because of its effect on the through rate structure, must join all carriers participating in the through rate. Stevens Grocer Co. *v.* St. Louis, I. M. & S. Ry. Co., 42 I. C. C. 396, 397–8; cf. Cairo Association of Commerce *v.* Angelina & N. R. R. Co., 160 I. C. C. 604, 608–9; Switching at Minneapolis, 235 I C. C. 405, 410. But it has also held that a shipper who attacks the validity of a component part of a through rate, viewed separately, and does not put in issue the validity of the through rate as a whole, may do so without joining any carrier other than the one responsible for the particular component under attack. Cairo Board of Trade *v.* Cleveland, C., C. & St. L. Ry. Co., 46 I. C. C. 343, 350–51; Indianapolis Chamber of Commerce *v.* Cleveland, C., C. & St. L. Ry. Co., 46 I. C. C. 546, 556; Phoenix Utility Co. *v.* Southern Ry. Co., 173 I. C. C. 500, 501–2, and cases cited; see *Atchison, T. & S. F. Ry. Co.* v. *United States,* 279 U. S. 768, 776–7. In the latter type of case, where the complaint puts in issue only the validity of one part of a through rate, the Commission has held that the carrier is not precluded from introducing evidence to show that the rate attacked should not be set aside as unlawful, in view of its relationship to the whole through rate. Nebraska-Colorado Grain Producers Assn. *v.* C., B. & Q. R. Co., 243 I. C. C. 309, 311–13; Fraser-Smith Co. *v.* Grand Trunk

proceeding the only question in issue is whether the proposed elimination of the loading charge is unjustly discriminatory or unduly prejudicial; nothing in the Commission's order or its Rules of Procedure forecloses attack on the line-haul rates in an appropriate proceeding on any ground which the statute authorizes.

Nor do we find anything in § 6 (1) which precludes the Commission from looking at the entire through rate. That section merely requires carriers to file with the Commission all rates and charges established by them, and to "state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed . . ." Appellees have complied with its requirement that the loading charge, and the exceptions to it created by the present tariffs, be separately posted. We have not

W. Ry., 185 I. C. C. 57, 62; Atkinson Milling Co. *v.* Chicago, M., St. P. & P. Ry. Co., 235 I. C. C. 391, 393–4.

Nebraska-Colorado Grain Producers Assn. *v.* C., B. & Q. R. Co., *supra,* involved an attack on a component part of a through rate as unreasonable and preferential. In denying complainant's motions to exclude evidence introduced by the carrier relating to the through rate structure of which the rate under attack was a part, the Commission said: "The right to attack one factor of a combination through rate without putting the through rate in issue presents an entirely different question from that raised by these motions. While we have consistently held, in the cases referred to by complainant and supporting interveners, that where reparation is not claimed, one factor of a combination through rate may be assailed independently of the other factor or factors or even of the through rate itself, this does not mean that we may not look at the through situation." The Commission further pointed out that, "Although we have authority to find separate components of through rates unlawful, we must, in doing so, give careful consideration to the effect of such a finding on the through rates." 243 I. C. C. at 312, 313. Similarly in investigation and suspension proceedings under § 15 (7), where necessarily the only rate in issue is that proposed and under suspension, the Commission has deemed it proper to consider the effect of the proposed rate on the through rate structure. Livestock to Eastern Destinations, 156 I. C. C. 498, 509.

construed § 6 (1), which is designed to insure publicity of rates, *Kansas City Southern Ry. Co.* v. *Albers Commission Co.,* 223 U. S. 573, 596–7, as precluding a carrier from performing an accessorial service free of charge provided no violation of any other section of the Act is shown. See *Interstate Commerce Comm'n* v. *Stickney,* 215 U. S. 98, 105. Nor does it preclude the Commission from considering the validity of the imposition or elimination of such a separately-stated charge in the light of its relationship to the through rate. Compare *Atchison, T. & S. F. Ry. Co.* v. *United States, supra.*

What we have said of § 2 suffices also to dispose of the objection based on § 3 (1). That section makes it unlawful to give an "undue or unreasonable preference or advantage" to, or impose an "undue or unreasonable prejudice or disadvantage" on, any "person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic." It differs from § 2 in that it may be availed of not only by shippers but by any other person who has been or may be injured by an inequality of rates.

But the facts which we hold sufficient to justify the Commission's finding that the elimination of the loading charge does not result in an unjust discrimination, are sufficient also to justify its finding that the elimination of that charge does not create an undue preference. Compare Clover Splint Coal Co. *v.* Louisville & Nashville R. Co., 197 I. C. C. 276, 277. We have frequently sustained the Commission's determination, in cases arising under § 3, that differences in competitive conditions justify lower through rates over one route than over another. *Texas & Pacific Ry. Co.* v. *United States, supra; Texas & Pacific Ry. Co.* v. *Interstate Commerce Commission,* 162 U. S. 197, 205–217; *Interstate Commerce Comm'n* v. *Chicago Great Western Ry. Co.,* 209 U. S. 108, 119, 121–2.

14

We cannot say here, any more than under § 2, that the Commission could not regard the truck competition to the Southwest, and the relative rate structures, disclosed in its report, as sufficient to warrant the difference in the cost of the through haul which results from the elimination of the loading charge by the present tariffs.

We have considered appellant's attack on the sufficiency of the evidence to support the Commission's findings, and conclude, as did the court below, that they are adequately supported by substantial evidence of record. Compare *Florida* v. *United States,* 292 U. S. 1, 12; *Merchants Warehouse Co.* v. *United States, supra,* 508.

*Affirmed.*

Mr. Justice Douglas, dissenting:

Sec. 2 of the Act makes it unlawful for any common carrier "by any special rate, rebate, drawback, or other device" to receive from any person "a greater or less compensation for any service rendered" in the "transportation" of passengers or property than it receives from any other person for doing for him "a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions." Loading is clearly a "service rendered" in the "transportation" of property [1] within the meaning of § 2. See *Merchants Warehouse Co.* v. *United States,* 283 U. S. 501. The practice which is now held to be free from the charge of unlawful discrimination under § 2 is the practice of loading cotton free for certain shippers who ship to one destination and exacting a loading charge from others who ship from the same points but to a different destination. That is to say, free loading of cotton is allowed shippers who ship cotton from Oklahoma to the

[1] Sec. 1 (3) (a) defines "transportation" so as to include "all services in connection with the receipt, delivery . . . and handling of property transported."

Texas Gulf ports; a loading charge [2] is required from those who ship cotton from the identical places in Oklahoma to the Southeast.

The Commission in its report justified that discrimination on the following considerations: (1) there is no trucking of cotton between points in Oklahoma and the Southeast, while there is considerable truck competition in the movement of cotton from Oklahoma to the Texas Gulf ports; (2) carload rates on cotton from Oklahoma to the Southeast are on a relatively lower basis than carload rates from the same origins to the Texas Gulf ports; and (3) rates from points in Oklahoma both to the Southeast and to the Texas Gulf ports are depressed. The Commission in its report made no specific reference to § 2. It now seeks to sustain its order on the ground that the conditions surrounding the respective line-hauls justified the carriers in absorbing the loading charge in the line-haul rates for one shipper but not for another. It endeavors to avoid the issue of discrimination by contending that § 2 as a matter of law has no application to the present situation. Its argument is that § 2 does not apply where the line-hauls are not over the same line, for the same distance, and to the same destination. That contention is based on *Wight* v. *United States,* 167 U. S. 512, which the Commission claims to have followed consistently.[3]

---

[2] The loading charge is 5.5¢ per square bale of cotton and 2.75¢ per round bale. This loading rate is carried separately in the tariffs as is required by § 6 (1) of the Act. See Tariff Circular 20 (I. C. C. 1933), Rule 10 (a).

[3] Richmond Chamber of Commerce *v.* Seaboard Air Line Railway, 44 I. C. C. 455, 464–466; Pacific Lumber Co. *v.* N. W. P. R. Co., 51 I. C. C. 738, 760; Tide Water Oil Co. *v.* Director General, 62 I. C. C. 226, 227; Standard Oil Co. *v.* Director General, 87 I. C. C. 214; Bunker Hill & Sullivan M. & C. Co. *v.* N. P. Ry. Co., 129 I. C. C. 242, 246; Cane Sugar from Wisconsin to Minnesota, 203 I. C. C. 373, 376; Miller Waste Mills, Inc. *v.* Chicago, M., St. P. & P. R. Co., 226 I. C. C. 451, 453.

I disagree with that construction of § 2. The *Wight* case involved a rebate by one road of a part of the rate between Cincinnati and Pittsburgh and was made on account of drayage at the Pittsburgh end. The Court held that § 2 was violated, saying that that section "prohibits any rebate or other device by which two shippers, shipping over the same line, the same distance, under the same circumstances of carriage, are compelled to pay different prices therefor." 167 U. S. p. 518. It does not follow that § 2 applies *only* where those identical conditions exist. Thus in Birkett Mills *v.* Delaware, L. & W. R. Co., 123 I. C. C. 63, the Commission had before it a complaint of millers, grain dealers, and elevator companies in New York respecting different transit charges on ex-lake and all-rail traffic, the transit charges being separately established. It held that "as the differing transit charges are for the same transit services at the same points by the same carriers, unjust discrimination under section 2 of the act exists." p. 65. No reference was made to line-haul conditions, though the relation between transit privileges and rate structures is intimate. *Atchison, T. & S. F. Ry. Co.* v. *United States,* 279 U. S. 768; *Board of Trade* v. *United States,* 314 U. S. 534. And the principles of the Birkett Mills case have been applied by the Commission to other situations where the haul was not over the same line, for the same distance, and to the same destination. Suffern Grain Co. *v.* Illinois Central R. Co., 22 I. C. C. 178, 183–184; Washington, D. C., Store-Door Delivery, 27 I. C. C. 347.

It was stated in *Interstate Commerce Commission* v. *Baltimore & Ohio R. Co.,* 145 U. S. 263, 284, that "any fact which produces an inequality of condition and a change of circumstances justifies an inequality of charge." Those inequalities of conditions may relate to the circumstances of carriage. But the fact that different rates for carriage are warranted does not necessarily mean that dif-

ferent rates for identical accessorial services in connection
with the carriage are justified. The Court stated in *Merchants Warehouse Co.* v. *United States, supra,* p. 511, that
"Section 2 forbids the carrier to discriminate by way of
allowances for transportation services given to one, in connection with the delivery of freight at his place of business, which it denies to another in like situation." And
see *Baltimore & Ohio R. Co.* v. *United States,* 305 U. S.
507, 524. By the same token, there is a forbidden discrimination, in case of an accessorial service such as loading, where different rates are charged different shippers
though the physical services rendered during the loading
are alike.

But it is said in reply that there is nothing in § 2 which
limits the phrase "under substantially similar circumstances and conditions" to the circumstances surrounding
the particular accessorial service in question; and that it is
a factual issue for the informed judgment of the Commission whether line-haul conditions are to be considered
in determining the validity of separate charges for services such as loading. The answer, however, seems clear.
The service of loading, like the transit service in the Birkett Mills case, is identical whether the property is going
south or southeast, whether its journey is long or short,
whether it is transported by one carrier or another. A
carrier which is loading in Oklahoma one car of cotton
for a southeastern mill and another car of cotton for a
Gulf port is certainly performing a "like and contemporaneous service in the transportation of a like kind of
traffic under substantially similar circumstances and conditions." A carrier which is loading two cars at the same
time, on the same siding, with the same commodity is
indeed performing the same service under the same circumstances and conditions. To charge the first shipper
for loading his car and to load the other one free would
be to impair the rule of equality which § 2 was designed

18

to inaugurate. *Interstate Commerce Commission* v. *Delaware, L. & W. R. Co.,* 220 U. S. 235; *Louisville & Nashville R. Co.* v. *United States,* 282 U. S. 740, 749–750. The result in the present case is a gross discrimination against shippers to the Southeast.[4]

There may be cases of special charges for special services where the validity of the rate under § 2 is dependent on whether the line-haul conditions are the same.[5] Yet § 2, though primarily related to the line-haul, is not restricted to it. *Merchants Warehouse Co.* v. *United States, supra.* At least where the service in question is purely accessorial, § 2 is applicable though the line-hauls are not over the same line, for the same distance and to the same destination. Where § 2 is applicable, competitive factors (such as those on which the Commission relied) are no justification for the discrimination. *Interstate Commerce Commission* v. *Alabama Midland Ry. Co.,* 168 U. S. 144, 166; *Interstate Commerce Commission* v. *Baltimore & Ohio R. Co.,* 225 U. S. 326, 342; *Seaboard Air Line Ry. Co.* v. *United States,* 254 U. S. 57, 62; Absorption of Loading Charge, 161 I. C. C. 389, 391; Allowance for Driving Horses, 227 I. C. C. 387, 389. The justification under § 2 for "unequal rates must rest in the facts of carriage and not in the financial interests of the carrier." Sharfman, The Interstate Commerce Commission, Pt. 3, Vol. B, p. 371.

There are, of course, occasions when a consideration of the line-haul rate in relation to the charge for an accessorial

---

[4] None of the carriers to the Southeast serves the Gulf ports. Appellee carriers have only a short part of the line-haul on cotton from Oklahoma to the Southeast.

[5] The Commission apparently has so treated the problem of absorption of switching charges. See Tide Water Oil Co. *v.* Director General, 62 I. C. C. 226; Restriction of Kansas City Switching District, 146 I. C. C. 438, 440. And see *Seaboard Air Line Ry. Co.* v. *United States,* 254 U. S. 57. Cf. *United States* v. *American Tin Plate Co.,* 301 U. S. 402.

service is proper. That is the case where a rate has been challenged under § 1 (5) (a) as not being "just and reasonable." In that event it is wholly proper to determine whether elements of cost not provided in the separate rate are in fact included in the line-haul rate. *Atchison, T. & S. F. Ry. Co.* v. *United States,* 232 U. S. 199, 219–220; Perishable Freight Investigation, 56 I. C. C. 449, 461–465; *Alton & Southern R. Co.* v. *United States,* 49 F. 2d 414, 417–428. But the issues framed by § 1 (5) (a) are larger than the more limited ones under § 2. And though the rate is just and reasonable under § 1, it may nevertheless create an unjust discrimination under § 2. *Interstate Commerce Commission* v. *Baltimore & Ohio R. Co.,* 145 U. S. 263, 277; *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624; *United States* v. *Illinois Central R. Co.,* 263 U. S. 515, 524.

But it is said that the loading charge is a component part of the total line-haul charge; that competitive conditions would justify a reduction in the line-haul tariff; and that a shipper is affected no more by an increase or decrease in one than in the other. It is therefore argued that changes in the charge for this accessorial service may be treated the same as if the line-haul tariff were in issue. That argument, however, results in this: an adjustment in charges for accessorial services such as loading is utilized as an indirect method of adjusting line-haul rates. That is not permitted under this statutory system. Although charges for services such as loading are a part of the total line-haul charge, they must be separately stated in the tariffs. § 6 (1); Rule 10 (a), *supra,* note 2. This proceeding put in issue not the line-haul tariff but the separately stated charge for loading, since the amended tariff made no change in the former. To allow this proceeding to be used to adjust indirectly the line-haul tariff is to circumvent the Act. The difference between the removal of a discrimination and the adjustment or fixing of rates

has long been recognized. *St. Louis S. W. Ry. Co.* v. *United States*, 245 U. S. 136, 145. The present line-haul rate is a through or joint rate in which carriers other than the appellee roads participate. Those other carriers are not parties to this proceeding; nor does it appear that they have consented to any adjustment of the line-haul rates. Congress has prescribed in § 15 (3) how those rates may be adjusted. It may be done only after a "full hearing," which means that all other carriers who are parties to the tariff must be joined. Stevens Grocer Co. *v.* St. Louis, I. M. & S. Ry. Co., 42 I. C. C. 396, 398; McDavitt Bros. *v.* St. Louis, B. & M. Ry. Co., 43 I. C. C. 695; *United States* v. *Abilene & So. Ry. Co.*, 265 U. S. 274, 283, note 6; Rules of Practice (I. C. C. 1936), Rule II (c) and (d). And the Commission may then adjust the through rates or joint rates either with or without the consent of the carriers. *St. Louis S. W. Ry. Co.* v. *United States, supra.* On the other hand, the loading charge, like the transit privilege involved in *Central R. Co.* v. *United States,* 257 U. S. 247, 255, 259, is a tariff for which other carriers participating in the through or joint rates are not necessarily responsible. In short, Congress has prescribed the procedure for obtaining adjustments of line-haul rates. That method is different from the one provided for adjusting a separate tariff of the kind we have here. We should not allow the procedure for readjusting line-haul rates to be circumvented through the rebate route. Cf. *Central R. Co.* v. *United States, supra.*

The determination by the Commission on the question of discrimination under § 2 is ordinarily a question of fact. *Nashville, C. & St. L. Ry. Co.* v. *Tennessee,* 262 U. S. 318, 322. Its findings on that issue are entitled to great weight (*Seaboard Air Line Ry. Co.* v. *United States, supra*) and will be given the respect which expert judgment on the intricacies of rate structures deserves. But disregard of the statutory standards is another matter. *Central R. Co.* v. *United States, supra.*

Since I would rest the reversal of the judgment below on § 2, it is not necessary for me to reach the issues raised under § 3.

MR. JUSTICE ROBERTS, MR. JUSTICE BLACK and MR. JUSTICE REED join in this dissent.